BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

    450 Golden Gate Avenue, 11th Floor
    San Francisco, California 94102
    Telephone: (415) 436-6830
    Facsimile: (415) 436-7234
    E-mail: Kyle.Waldinger@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) No. CR 15-0101 CRB |
|---|---|
| Plaintiff, | ) **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | ) |
| CLARKE J. HOWATT, | ) Sentencing Date: March 23, 2016 |
| | ) Time: 10:00 a.m. |
| Defendant. | ) Court: Hon. Charles R. Breyer |

The defendant Clarke J. Howatt is to be sentenced on March 23, 2016. Howatt pleaded guilty pursuant to a Rule 11(c)(1)(A) and (B) Plea Agreement on December 15, 2015 to the single count in the Information. The Information charged Howatt with wire fraud, in violation of 18 U.S.C. § 1343. In their Plea Agreement, the parties agreed on the calculation of the Sentencing Guidelines, and the government agreed to recommend a sentence no higher than the low end of offense level 22.

The United States now files this Memorandum to address the offense conduct and the calculation of the Sentencing Guidelines, as well as to advise the Court of its sentencing recommendation. As set out in more detail below, the United States recommends a sentence of 41 months' imprisonment. The United States also requests that the Court impose a three-year term of supervised release. For the reasons stated in ¶ 9 of the Plea Agreement, the United States does not recommend that the Court enter a

restitution order in this case. The defendant should, however, be ordered to pay the $100 special assessment at the time of sentencing. The United States does not recommend a fine.

## DISCUSSION

**I.     The Offense Conduct.**

In the PSR, the Probation Officer provides a description of the offense conduct. *See* PSR, ¶¶ 6-20. As set forth therein and in the Plea Agreement (¶ 2), the defendant Clarke J. Howatt served for many years as the Public Finance Director for the Association of Bay Area Governments ("ABAG"), a joint powers authority created in the 1960s.[1] The ABAG Finance Authority for Nonprofit Corporations ("FAN") is a related joint powers authority formed in 1990 to serve as a conduit issuer of bonds. Although ABAG and FAN are legally separate entities, for all practical purposes they operated as the same organization and are often referred to herein as "ABAG/FAN."

In the summer of 2011, and again in the summer of 2014 and in January 2015, the defendant engaged in a scheme to defraud to obtain funds from various bond accounts and other accounts established by FAN. He did so by providing false information to the trustees of bond accounts and to others in order to fraudulently induce the trustees and others to wire funds from bond accounts and other accounts to bank accounts that he controlled. These embezzlements – and the actions that the defendant took to accomplish them – are summarized below.

June 2011 – Theft of $1,098,712.48 of Windemere Ranch Funds. Windemere Ranch is a housing development located in San Ramon. FAN issued several bonds for public capital improvements associated with Windemere Ranch and its special districts. Plea Agrm., at 4:6-8. In June 2011, the defendant stole $1,098,712.48 from an account associated with the Windemere Ranch bonds and related community facility districts and assessment districts. These funds were left over after the improvements funded by the bonds had been completed. Plea Agrm., at 4:8-10. The defendant accomplished this embezzlement by taking a series of actions, including by sending the e-mail and its attachments attached

---

[1] A joint powers authority is an entity created under a joint powers agreement between two or more public agencies pursuant to California Government Code Sections 6500 *et seq.* A joint powers authority can exercise any powers common to its member entities. The power most relevant to this case that ABAG (and FAN) exercised was the ability to issue bonds and administer special tax districts.

hereto as Exhibit 1.[2]  The defendant also caused the internal ABAG/FAN documents attached hereto as Exhibit 2 to be created and approved in order to effectuate the payment of $1,098,712.48.  Prior to this date, the defendant had also established "Windemere BLC Land Company, LLC" in Nevada.  *See* Ex. 3; PSR, ¶ 12.  The funds were ultimately transferred to a Wells Fargo account that the defendant had opened.  Plea Agrm., at 4:11-14.

June 2014 – Theft of $1,225,000 of Windemere Ranch Funds.  In June 2014, the defendant created false documentation to obtain another $1,225,000 of Windemere Ranch funds held at the Bank of New York Mellon.  Plea Agrm., at 4:15-18.  He did so using a method similar to that which he used in June 2011.  For example, on June 24, 2014, Howatt sent a letter to BNY Mellon Trust Company signed by him and by ABAG's CFO, which letter contained detailed instructions regarding the transfer of certain funds.   These funds included $1,225,000 that the letter directed be sent to "Windemere BLC Land Company, LLC" for "reimbursable costs, fees, and expenses of the Windemere Ranch Master Developer."  Ex. 4, at 1.  The defendant's letter requested that the $1,225,000 be transferred to a Wells Fargo account that the defendant had opened in a nominee name earlier in June 2014.  The trustee then transferred the funds as requested.  Plea Agrm., at 4:19-22.

August 2014 – Theft of $1,296,340.66 of Rincon Hill Funds.  In July and August 2014, the defendant took a series of actions designed to obtain funds left over from capital improvement projects in the Rincon Hill area in San Francisco.  First, he caused disbursement authority over these left-over funds to be assigned to FAN by convincing FAN's CFO to sign, and FAN's Executive Committee to approve, a First Supplemental Indenture.  *See* Ex. 5; Plea Agrm., at 3:12-14.  After the Indenture was executed, Howatt submitted a reimbursement request for $1,296,340.66 to the Union Bank trustee purported to be from "Urban West for Rincon Developers LLC."  This request explained that the funds were "for reimbursable costs, fees, and expenses submitted to [FAN]" by the developer of the Rincon Hill project.  *See* Ex. 6, at 1.  The letter submitted by Howatt directed that the $1,296,340.66 be wired to

---

[2] The United States has redacted the exhibits to display only the last four digits of account numbers.  The United States has also redacted the names and contact information of innocent individuals.  The United States has also redacted most telephone and fax numbers.  It has not redacted aliases used by the defendant, such as Nick Pocquette and David Cordero.

USA'S SENTENCING MEMORANDUM
CR 15-0101 CRB                                        3

a Citibank account numbered ending -5662 that Howatt had created earlier in August 2014. *See* Ex. 7 (Citibank account application). The Citibank account was in the name of "Rincon Developers, LLC," a business entity that Howatt had created in Nevada in July 2014. Plea Agrm., at 3:20; *see also* Ex. 8 (Nevada Secretary of State record). As Howatt admitted in his Plea Agreement, he used most of these funds to purchase a home in Oregon. *See* Plea Agrm., at 4:1-2. Indeed, bank records obtained by the United States show that Howatt wired most of the $1,296,340.66 to the title company the same day that the funds hit the Citibank "Rincon Developers" account. *See* Ex. 9 (Citibank account statement).

January 2015 – Theft of $256,082.07 of Windemere Ranch Funds. On about January 23, 2015, the defendant again created documents in order to obtain additional funds related to Windemere Ranch from BNY Mellon. Specifically, the defendant caused a letter dated January 23, 2015 to be signed by ABAG/FAN's assistant finance director. The letter directed BNY Mellon to redeem certain investments and to wire $256,082.07 to a Wells Fargo account in the name of "Windemere BLC Land Company, LLC," which bank account Howatt controlled. Ex. 10.

As set forth in the PSR, the defendant executed the final theft of $256,082.07 in order to help pay back the August 2014 theft of Rincon Hill funds. PSR, ¶ 19. The defendant's efforts in this regard were due to the fact that the City of San Francisco had discovered that certain Rincon Hill funds had "vanished" during a routine accounting in December 2014. *See* Ex. 11 (SFGATE article dated 1/27/15).

By January 29, 2015, suspicion regarding the theft of the Rincon Hill funds had fallen on the defendant. *See* Ex. 12 (SFGATE article). As noted in the PSR, the defendant and his attorneys met with representatives of the U.S. Attorney's Office and the FBI about a week later, on February 6, 2015. PSR, ¶ 10. At that interview, the defendant confessed to each of the thefts summarized above, including the three Windemere Ranch thefts that had not yet come to light. Thereafter, the defendant provided additional information to ABAG to assist ABAG with its investigation. In addition, by the time of the guilty plea in this case, Howatt and the defense had taken steps to obtain significant funds for restitution.

**II.    The Guidelines Calculations.**

The applicable Guideline provision is U.S.S.G. § 2B1.1(a)(1). Pursuant to that section, the base offense level is level 7. Because the loss to ABAG/FAN exceeded $3,500,000, 18 levels should be added pursuant to U.S.S.G. § 2B1.1(b)(1)(J). Another two levels should be added to account for

Howatt's abuse of the position of trust he held at ABAG/FAN, pursuant to U.S.S.G. § 3B1.3.

With a three-point reduction for acceptance of responsibility, and an additional stipulated two-point reduction (*see* Plea Agrm., ¶ 7.e), the total offense level is level 22.

The defendant is in criminal history category I. This establishes an applicable Guidelines range of 41 to 51 months, which falls within Zone D of the Guidelines.

**III.     United States' Sentencing Recommendation.**

Consistent with the Plea Agreement, the United States recommends that the Court impose a sentence of 41 months' imprisonment, followed by a three-year term of supervised release. The Court should also impose a special assessment of $100.

In determining the appropriate sentence in this case, 18 U.S.C. § 3553(a) directs the Court to consider the following factors:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed—

   (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)     to afford adequate deterrence to criminal conduct;

   (C)     to protect the public from further crimes of the defendant; and

   (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established for—

   (A)     the applicable category offense committed by the applicable category of defendant as set forth in the guidelines . . . .

(5)     any pertinent policy statement . . . .

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The United States believes that, taking into account the applicable Guidelines range, the offense

conduct, the facts of this case, and the factors set out in 18 U.S.C. § 3553(a), the recommended sentence of 41 months will appropriately punish the defendant for his crime, deter him from committing similar crimes in the future, and deter other individuals from engaging in similar conduct. The United States discusses below some of the salient Section 3553(a) factors.

**A.  The Nature and Circumstances of the Offense, the History and Characteristics of the Defendant, and the Need to Impose a Sentence that Reflects the Seriousness of the Offense (Sections 3553(a)(1) and (a)(2)(A))**

As an initial matter, the offense conduct in this case consisted of a multi-million dollar fraud against ABAG/FAN. The defendant was a long-time employee of ABAG/FAN, and served as its Financial Services Director. In committing his crimes, he abused the trust that had been placed in him by ABAG/FAN (and, by extension, the Bay Area governmental entities that make up ABAG). The defendant committed the thefts at issue over a significant period of time – in June 2011, June 2014, August 2014, and January 2015. On each occasion, the defendant had to take a series of steps to accomplish the theft, including convincing other individuals that the requested disbursement of funds was legitimate. By all accounts, the defendant was not living hand-to-mouth when he stole these funds. He appears to have embezzled the funds, at least in part, for the purpose of purchasing real estate, artwork, motorcycles, and a boat, among other items. PSR, ¶¶ 15-16.

On the other side of the coin, after his conduct was discovered and reported in the press, the defendant and his attorney met with representatives of the U.S. Attorney's Office and the FBI without the benefit of a "proffer" agreement. In that meeting, the defendant confessed his conduct, and did so without shading the truth.[3] Such early, truthful confessions are truly rare. Thereafter, the defendant waived indictment, and he entered his guilty plea in December. During 2015, the defendant, his family, and his attorneys made efforts to collect funds to be used for restitution. As set forth in the PSR, the defense gathered more than $3.1 million of the $3,876,135.21 that the defendant misappropriated, and these funds have been provided to ABAG/FAN. (In addition, more than $356,000 in funds seized by the

---

[3] Government counsel reported to the Probation Officer that Howatt had confessed his thefts in the "exact amounts." *See* PSR, ¶ 98. To be precise, some of the figures presented by the defendant in his February 2015 interview may have been slightly off (*e.g.*, $1,098,072.48 instead of $1,098,712.48), but this is a distinction without a difference. During the course of the government's and ABAG's investigation, no other thefts were discovered other than the ones that that defendant initially reported.

United States from the defendant's bank accounts have been forfeited and returned to ABAG/FAN.)  As this Court is well aware, it is also unusual and rare for the victim in a multi-million-dollar embezzlement scheme to receive any appreciable restitution, let alone such an amount as in this case.

**B.    The Need to Promote Respect for the Law, to Provide Just Punishment for the Offense, and to Afford Adequate Deterrence to Criminal Conduct (Sections 3553(a)(2)(A) and 3553(a)(2)(B))**

The defendant has been convicted of what is commonly described as a "white collar" offense.  A sentence of imprisonment will promote respect for the law and will demonstrate that defendants who commit such crimes will be held accountable when they break the law, just as defendants who break other types of laws.

Promotion of respect for the law ties in with deterrence.  Cases involving white collar crime offer a special opportunity for the Court to achieve the goal of general deterrence.  A sentence of imprisonment will send a strong deterrent message to other individuals who face similar circumstances, including those who work for entities (such as ABAG/FAN) charged with preserving, maintaining, and developing the public good.

**C.    The Defendant's Mental Condition**

The defendant has submitted a psychologist's report to the Court, which was written by Bryant L. Welch, J.D., Ph.D.  In considering the defendant's reported mental condition, this Court should consider the following:

*First*, the defendant has agreed that no other "departures" or reductions under the Guidelines are warranted other than those set forth in the Plea Agreement.

*Second*, although the report suggests that Howatt's criminal conduct may have been tied in some way to his medication regimen, it does not explain the three-year period between June 2011 and June 2014 during which Howatt was on that regimen but did not commit any thefts.

*Third*, the defendant's actions in committing the fraud at issue demonstrate that he was a person who could exert focused attention on the matters at hand.  This is exemplified by the steps that the defendant needed to take to accomplish each theft.  For example, in order to accomplish the theft of $1,296,340.66 that is described above and in ¶ 9 of the PSR, he had to take the following actions:

- Obtain approval for the First Supplemental Indenture, which gave FAN authority over the Rincon Hill funds, *see* Ex. 5;

USA'S SENTENCING MEMORANDUM
CR 15-0101 CRB                                                  7

- Draft a request for reimbursement to the trustee of the -4410 Union Bank account in the amount of $1,296,340.66, *see* Ex. 6;

- Submit that request to the trustee, after convincing ABAG/FAN's CFO to sign it, *see* Ex. 6;

- Establish (on August 11, 2014) the Citibank account numbered ending -5662 in the name of Rincon Developers LLC, to which those funds could be transferred, *see* Ex. 7; and

- Establish (on July 23, 2014) Rincon Developers, LLC as a legal entity in Nevada, *see* Ex. 8.

Following this theft of funds, the defendant immediately made two transfers of $471,000 and $800,000 on August 12, 2014 to the title company toward the purchase of a house and nearby property in Pacific City, Oregon. *See* Ex. 9. These actions are not those of a person who was encumbered by his medical conditions. On the contrary, these actions show that the defendant was capable of taking concerted and coordinated steps to achieve his goals.

*Finally*, the defendant's actions throughout his multi-year course of conduct indicate that he was aware of the wrongfulness of his actions. Indeed, the many steps that the defendant took to deceive ABAG/FAN, his fellow employees, and the account trustees and to make it appear that the disbursements were going to legitimate entities shows that the defendant was well aware that what he was doing was "wrong," if only in the sense that he knew that he would not be allowed to take those actions if ABAG/FAN and the account trustees were aware of the true facts. Furthermore, the defendant's actions regarding his final theft of $256,000 in January 2015, shortly before he was identified as a suspect and confessed, reflect someone who was aware that what he had done was wrong. As set forth in the PSR, the defendant submitted that fraudulent request for reimbursement as part of an attempt to obtain money to pay back the money he had stolen from another account in August 2014. *See* PSR, ¶ 19. Again, these actions by the defendant in January 2015 are a reflection of the defendant's recognition of the wrongfulness of his conduct, despite the mental health issues that he may have faced.

## CONCLUSION

Based on the nature of the offense, the characteristics of the defendant, the Sentencing Guidelines, and the Section 3553(a) factors, the United States respectfully recommends a sentence of 41 months' imprisonment, to be followed by a three-year term of supervised release. This sentence would

reflect the seriousness of the defendant's conduct, but would also recognize (among other factors) the defendant's early and extraordinary acceptance of responsibility in this case, which included a complete confession and efforts to make restitution to ABAG/FAN.  The United States objects to the imposition of a sentence greater than 41 months in this case; such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

The United States recommends that the Court make a finding under 18 U.S.C. § 3663A(c)(3)(B) that determining the amount of the restitution judgment would require determination of complex issues of fact and would complicate and prolong the sentencing process to a degree that would place undue burden on that process.  However, the Court should order the defendant to pay the special assessment of $100 at the time of sentencing.

DATED: March 16, 2016                    Respectfully submitted,

                                                 BRIAN J. STRETCH
                                                 Acting United States Attorney

                                               /s/
                                             KYLE F. WALDINGER
                                             Assistant United States Attorney